56 CCPA

**Application of Robert R. MOD, Evald L. Skau, Sara P. Fore, Frank C. Magne, Arthur F. Novak, Harold P. Dupuy, Jesse R. Ortego, and Mary J. Fisher.**

**Patent Appeal No. 8065.**

United States Court of Customs and Patent Appeals.

April 10, 1969.

T. Hayward Brown, Washington, D. C., Alfred B. Engelberg, Silver Spring, Md. (R. Hoffman, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

WORLEY, Chief Judge.

The sole issue here is whether the Board of Appeals committed reversible error in sustaining the examiner's rejection of claims 1, 2, 15, 20, 21 and 23 [1] as unpatentable over Bousquet [2] under 35 U.S.C. § 103.

The invention relates to certain morpholides of fatty acids which, the specification states, exhibit antimicrobial [3] activity against a variety of microorganisms such as bacteria, yeast and molds. Claim 23 is illustrative:

> 23. A member selected from the group consisting of 4-(6-hydroxycaproyl) morpholine, 4-decanoyl-2, 6-dimethylmorpholine, 4-cleoyl-2, 6-dimethylmorpholine, 4-petroselinoyl-morpholine, and the morpholides of parsley seed oil fatty acids.

The remaining claims are directed to each of the amides of morpholine and particular fatty acids recited in claim 23.

Bousquet discloses various carboxylic acid amides "having a heterocyclic radical and an aliphatic hydrocarbon radical of at least six carbon atoms" which are useful as insecticides and "have remarkably high toxicity toward lower forms of life." Typically, morpholine is the "heterocyclic radical" and various long chain fatty acids provide the "aliphatic hydrocarbon radical." Among the many morpholides specifically mentioned by Bousquet, the examiner drew attention to the disclosure of morpholides of china-wood and soya bean oil acids, 4-ricinoleyl morpholine, 4-(12-hydroxystearyl) morpholine, and 4-(10, 11-undecylenoyl) morpholine. He particularly relied on Bousquet's disclosure of 4-n-dodecanoylmorpholine and 4-oleyl-morpholine, describing the former as a homolog of the compound of claim 2 and the latter as a homolog and isomer of the

---

1. Appearing in application serial No. 353,012, for "Certain Derivatives of Aliphatic Acid Amides," filed November 4, 1963, as a division of serial No. 197,545, filed May 24, 1962.

2. U.S. Patent No. 2,166,118, issued July 18, 1939.

3. Dorland's Illustrated Medical Dictionary, 23rd Edition (1957) defines "antimicrobial" as:
   1. Destroying microorganisms, or suppressing their multiplication or growth.
   2. An agent which destroys microorganisms or suppresses their multiplication or growth.

compounds of claims 15 and 20, respectively. Said the board:

\* \* \* the compounds claimed are so closely related to the compounds disclosed by the reference that they are structurally obvious therefrom. Appellants point out that the reference only asserts insecticidal properties for the compounds disclosed therein, whereas in this application a novel property is attributed to the products claimed, that is, they are antimicrobial. Appellants cite a considerable number of decisions to support their view that a novel property for a compound renders the compound unobvious and, therefore, patentable.

However, as pointed out by the Examiner in his Answer "On Remand," the present specification in Table I shows that the prior art compounds disclosed by Bousquet et al. possess the same or similar antimicrobial properties as [do appellants'] \* \* \*. It, therefore, appears that the claimed compounds do not possess any property which is not possessed by the prior art compounds \* \* \*.

In view of this showing by appellants that actually the prior art compounds do possess antimicrobial activity, we are not persuaded that the particular compounds claimed possess an unobvious property and are, therefore, patentable. There is a sufficiently close similarity between the compounds claimed and the prior art compounds disclosed in the reference to suggest to one skilled in the art the making of the claimed compounds.

In a request for reconsideration, appellants protested the use of *their discovery* disclosed in their specification (that certain of Bousquet's compounds do indeed possess antimicrobial activity) as a connecting link in establishing obviousness of the claimed subject matter. Subsequently, the board further elucidated the reasons for its conclusion:

\* \* \* we consider that In re Henze, \* \* \* [37 CCPA 1009, 181 F.2d 196, 85 USPQ 261 (1950)], applies \* \* \*. This decision indicated that the burden is on applicant to show that the claimed compound possesses unobvious or unexpected beneficial properties not actually possessed by a prior art homolog. \* \* \* Appellants therefore have not overcome the Henze decision since they have indicated that the claimed products have antimicrobial properties similar to the related prior art compounds.

It is unnecessary to discuss the various errors appellants have assigned to the above portions of the board's opinions, for we find no reversible error in the *remaining* substance of its position. It is apparent from the record that the Patent Office has not relied on so-called "structural" obviousness of the claimed compounds alone in support of its conclusion, as appellants allege, or solely on appellants' specification disclosure that some of Bousquet's compounds do possess antimicrobial activity. Indeed, the examiner thought the compounds of the claims "would be expected to possess the same properties" as Bousquet discloses for his compounds, and stated:

\* \* \* if the claimed compounds are obvious as insecticides, the additional property of antimicrobial activity, even if such property was not obvious from the prior art, does not necessarily make the claimed compounds patentable under 35 U.S.C. § 103. In re [De Montmollin] et al. \* \* [52 CCPA 1287, 344 F.2d 976, 145 USPQ 416 (1965)].

The board took a similar view, regarding it apparent that the claimed compounds "are useful as insecticides."

Appellants do not seriously dispute the close structural relationship between the claimed compounds and those of Bousquet. Nor do they maintain that the claimed compounds are not in fact insecticides or controvert the obviousness of the claimed compounds as insecticides, the specific property possessed by the particular compounds disclosed by Bousquet. Rather they contend that their discovery of the "unobvious or unexpected" antimicrobial activity of the claimed compounds, not disclosed by the prior art, is

sufficient to render "the subject matter as a whole" unobvious under § 103.

We think the present factual situation is indistinguishable in principle from that in In re De Montmollin, relied on by the examiner. There we stated (footnotes omitted):

We do not agree with appellant that a *single* variance in the properties of new chemical compounds will necessarily tip the balance in favor of patentability where otherwise closely related chemical compounds are involved. See In re Huellmantel, 324 F. 2d 998, 51 CCPA 845, 139 USPQ 496. It goes without saying that all evidence of record tending to establish obviousness or unobviousness must be considered.

We need not *surmise* here that the present compounds have *many significant properties* as dyes in common with the prior art compounds, in addition to a close similarity in chemical structure. That fact is amply established by the record. The claimed substances, as well as those of the prior art, are water soluble materials useful as dyes. Both sets of compounds have the property of being wool dyes and both result in dyeings on wool fabrics which are fast to washing and fulling. Under the circumstances, and weighing the available evidence, we do not regard the additional ability to dye cotton sufficient to render the subject matter as a whole unobvious. We think the reference teachings provide more than adequate reason to those of ordinary skill for making the present compounds.

Inasmuch as the claimed compounds and those of Bousquet do possess a close structural relationship and it is not denied that they have a *specific, significant* property in common, viz. insecticidal activity, we do not regard the additional antimicrobial activity discovered by appellants for the claimed compounds sufficient ground to hold that the subject matter as a whole is unobvious. See also In re Crounse, 53 CCPA 1390, 363 F.2d 881, 150 USPQ 554 (1966). It may well be that the present compounds are

unobvious antimicrobial agents to those working in that art. In that event, appellants are not without further recourse. 35 USC § 100(b), 101; In re Wiggins, 55 CCPA 1356, 397 F.2d 356, 158 USPQ 199 (1968); In re Hack, 44 CCPA 954, 245 F.2d 246, 114 USPQ 161 (1957). There is no evidence here, however, to contradict the conclusion that the present compounds are obvious *insecticides* to those working in the *insecticide* art, and thus have been effectively placed in the public domain by Bousquet who provides adequate motivation to those of ordinary skill to make them.

The decision is affirmed.

Affirmed.

Judge SMITH participated in the hearing of this case but died before a decision was reached.