59 CCPA

**Application of Lee Ellis MURCH.**

**Patent Appeal No. 8743.**

United States Court of Customs and Patent Appeals.

Aug. 24, 1972.

Rehearing Denied Oct. 19, 1972.

Edwin Tocker, Wilmington, Del., attorney of record for appellant; Gerald A. Hapka, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), United States Supreme Court, sitting by designation.

LANE, Judge.

This is an appeal from the decision of the Board of Appeals affirming the 35 U.S.C. § 103 rejection of claims 1 through 8 and 10 of appellant's application for "Blends of Polyamides and Ionic Copolymer."[1] We affirm with respect to claims 1 through 8, but reverse with respect to claim 10.

Claim 1 is the broadest of the appealed claims and reads as follows:

1. A thermoplastic blend consisting essentially of an intimate mixture of from 50 to 99% by weight of a polyamide and, complementally, from 1 to 50% by weight of an ionic copolymer of units derived from an α–olefin of the formula $RCH = CH_2$ wherein R is H or alkyl having from 1 to 8 carbon atoms and from 0.2 to 25 mole % of units derived from an α, β–ethylenically unsaturated carboxylic acid, at least 10% of the acid groups of said acid being neutralized by metal ions.

The claims are drawn to a blend of (1) a polyamide, such as polyhexamethylene adipamide (claim 2), and (2) an ionic copolymer of (a) an alpha-olefin, such as ethylene (claim 5), and (b) an alpha-beta-ethylenically unsaturated carboxylic acid, such as methacrylic acid (claim 3) or maleic acid (claim 4), wherein at least 10 percent of the acid groups have been neutralized by metal ions, such as zinc (claim 6). The blend may additionally contain an antioxidant (claim 8), and claim 7 depends from claim 1 and defines the ionic copolymer as a random

1. Serial No. 522,374 filed January 24, 1966.

copolymer. Claim 10 depends from claim 7 and reads as follows:

> 10. The thermoplastic blend of claim 7 wherein from 60 to 85 per cent by weight of said blend is said polyamide with the remainder being said copolymer and from 1 to 8 mole % of said copolymer is said acid.

Two properties of blends such as those herein claimed are relevant to this appeal. Blend toughness refers to the toughness, i. e., the ability to withstand deformation without fracture, of a molded article composed of the blend. When an article is formed by injecting the molten blend into the forming mold from two sources, a weld line is formed at the juncture of the several masses. Such a weld line would also form whenever there is an obstruction in the molding chamber. The weld line apparently represents the weakest point in the molded article, and weld line toughness refers to the toughness of an article formed from the blend where a weld line is present. Blend toughness is measured on an article molded from the blend without a weld line.

Appellant asserts that the claimed blends exhibit a greater blend toughness than blends which differ only to the extent that none of the acid groups on the copolymer are neutralized. However, the improvement in blend toughness is not considered to be exceptional or unexpected. What appellant does urge is that weld line toughness is dramatically increased for the blend defined in claim 10 when at least 10 percent of the acid groups are neutralized and that this improvement is completely unexpected. In support of these contentions, appellant submitted a Rule 132 affidavit, and on this appeal, the solicitor does not challenge the sufficiency of that showing.[2] Hence as we consider the prior art, we do so with the understanding that neutralizing at least 10 percent of the copolymer acid groups produces no unexpected result with respect to blend toughness, but that insofar as the blend of appealed claim 10 is concerned, the weld line toughness is unexpectedly improved when the acid copolymer is partially neutralized.

The examiner and board relied upon Halliwell et al. (Halliwell)[3] and Rees.[4] Halliwell, the principal reference, discloses blends composed of a polyamide and an olefin-acid copolymer. The only difference between Halliwell's blends and appellant's resides in the neutralization of at least 10 percent of appellant's acid groups with metal ions. Rees discloses ionic olefin-acid copolymers and specifically teaches that the neutralization of at least 10 percent of the acid groups to render the copolymers ionic improves various copolymer properties, including toughness. The examiner reasoned that Rees provides ample suggestion for one of ordinary skill in the art to substitute the ionic copolymers for the nonionic copolymers in the Halliwell blend, and since the Halliwell blend so modified is appellant's claimed blend, the examiner rejected claims 1 through 8 and 10 under 35 U.S.C. § 103 as obvious from Halliwell and Rees. The board elaborated on the teachings in Rees which would suggest that the improvements in the copolymer would be carried over to a blend having as one of its components that copolymer. The examiner's rejection of the claims was sustained.

Appellant argues claims 1 through 8 separately from claim 10. With respect to the first eight claims, appellant contends that one of ordinary skill in the art would not be led to substitute the ionic copolymers disclosed by Rees for the copolymer component of the Halli-

---

2. The examiner allowed claim 9 which is directed to a process of improving the weld line toughness of an article by utilizing appellant's blend to form an article with a weld line therein.

3. French patent No. 1,386,563 patented December 14, 1964, and equivalent to

British patent No. 998,439, published July 14, 1965, which is used by the parties for convenience.

4. Patent No. 3,264,272 issued August 2, 1966, on an application filed April 8, 1963.

well blends. Appellant introduced a patent to Mesrobian et al. (Mesrobian)[5] which discloses blends of a polyamide and a polyolefin such as polyethylene or polypropylene. Appellant claims that the Mesrobian blends lacked toughness and that Halliwell discovered that the substitution of an olefin-acid copolymer for the polyolefin of Mesrobian improves that property. Halliwell theorizes that the acid groups on the copolymer may react with the polyamide, and appellant presumes that this interaction is responsible for the improved toughness of the Halliwell blends as compared to the Mesrobian blends which lack the acid groups. Appellant's conclusion is that one of ordinary skill in the art would not neutralize any of the acid groups and thereby take away the constituents which when added improved the toughness of the composition. In short, appellant perceives a trend in blend developments toward increasing the number of acid groups in the blend. Appellant's neutralization step is contrary to the supposed trend and is urged to be unexpected, the Rees disclosure notwithstanding. As to claim 10, appellant contends that the uncontested showing of unexpected, superior weld line toughness is sufficient for patentability even if the blends are prima facie obvious from Halliwell and Rees.

OPINION

*Claims 1 through 8*

 We agree with the solicitor that appellant's suppositions regarding the reaction between the acid groups on the copolymer and the polyamide and the role of that reaction in improving toughness are unsupported and speculative. We also agree that Halliwell and Mesrobian fail to establish any trend in the area of polymer blends. Appellant's case for a trend is built entirely about the Halliwell modification of the Mesrobian blend, and we think the solicitor is justified in questioning whether one of ordinary skill in the art would make

the assumptions appellant makes only on the basis of Halliwell's discovery. In contrast to appellant's theory is the Rees disclosure which clearly points to the advantageous impact of partial copolymer neutralization on product properties. We do not think that one of ordinary skill in this art would be dissuaded from adopting the Rees improvement in polyamide-olefin-acid copolymer blends in the fear that some neutralization of the acid groups would necessarily result in a sacrifice of the improvements made by Halliwell. Rather, we are convinced that the reference teachings appear to be sufficient for the ordinary artisan having Halliwell and Rees before him to make the modification of Halliwell proposed by the examiner and board. The Patent Office has thereby made out a prima facie case of obviousness, In re Lintner, 458 F.2d 1013, 1016, 59 CCPA ——, —— (1972), and in the absence of rebuttal evidence as to these claims, the decision of the board sustaining their rejection is affirmed.

*Claim 10*

██ ██ We regard the subject matter of claim 10 to be prima facie obvious from Halliwell and Rees for the same reasons as claims 1 to 8. However, the uncontested fact is that the blend of claim 10 exhibits unexpectedly improved weld line toughness as compared to the Halliwell blends. We have previously held proof of such a fact to be persuasive rebuttal of the prima facie case. See In re Ackermann, 444 F.2d 1172, 58 CCPA 1405 (1971); In re Orfeo, 440 F.2d 439, 58 CCPA 1123 (1971). As Judge Rich, writing for a majority of the court in In re Papesch, 315 F.2d 381, 386–387, 50 CCPA 1084, 1092 (1963), said:

If that which appears, at first blush, to be obvious though new is shown by evidence *not* to be obvious, then the evidence prevails over surmise or unsupported contention and a rejection based on obviousness must fall.

5. Patent No. 3,093,255 issued June 11, 1963.

See also In re Palmer, 451 F.2d 1100, 1102–1103, 59 CCPA ——, —— (1971), wherein we said:

> Appellant has cited a number of cases in his brief and at oral hearing which generally indicate that this court, as well as other federal courts, has found patentable subject matter even where the invention is apparently simple in nature or quite "close," on the surface, to the prior art, but where the small difference has eluded those of ordinary skill in the art in search of the solution to a persistent problem or where that difference unexpectedly yields an improved product or known product in an unexpectedly advantageous manner. There are many opinions of that type [footnote omitted], the point being that the legal conclusion of obviousness cannot be reached without an appreciation of the level of ordinary skill in the art, [citation omitted], and that "level" must be determined by a consideration of all evidence made available to the trier of the issue which is related to the state of the particular technology at a given point in time. When *all* the evidence is evaluated, it may well turn out, and often does, that the level of skill was not quite what it appeared to be when only a portion of the evidence, e. g., printed patents or publications, was considered.

The solicitor is of the view that in the present case where it would be "obvious" to modify Halliwell and achieve improved blend toughness, that conclusion is not weakened even when the unexpected improvement in weld line toughness is considered. He apparently urges that once the prior art has provided one of ordinary skill in the art with the motivation to make the modification not only by the suggestion to substitute the Rees copolymers for those used by Halliwell but additionally by the expectation that a significant blend property will be enhanced, obviousness must be conclusively found regardless of the unanticipated improvement in other properties.

For support, the solicitor relies upon In re Mod, 408 F.2d 1055, 56 CCPA 1041 (1969), and In re De Montmollin, 344 F.2d 976, 52 CCPA 1287 (1965), wherein this court held certain claimed compounds to be obvious from structurally similar compounds disclosed in the prior art. In each of *Mod* and *De Montmollin,* the appellants asserted that they had discovered that the claimed compounds had a significant property not disclosed in the prior art, although the prior art compounds were thought to have a significant property which the claimed compounds possessed as well. Thus, in *Mod,* both the prior art compounds and the claimed compounds were useful as insecticides, but the claimed compounds were found to have antimicrobial activity whereas the prior art disclosures were silent in this respect. In *De Montmollin,* the claimed compounds were useful as dyes for both wool and cellulose, but while the prior art disclosed structurally related compounds useful as wool dyes, there was no suggestion of any capacity to dye cellulose products. Concluding that the claims were not patentable, Chief Judge Worley, writing for the majority in *De Montmollin,* stated:

> We do not agree with appellant that a *single* variance in the properties of new chemical compounds will necessarily tip the balance in favor of patentability where otherwise closely related chemical compounds are involved.[6]

That view was reaffirmed in *Mod.*

The solicitor contends that claim 10 on appeal here is in the same posture as the *Mod* and *De Montmollin* claims. The blend defined therein shares the common significant property of good blend toughness but additionally possesses unexpectedly superior weld line toughness. There is one very crucial distinction, however, between *Mod* and *De Montmollin* on the one hand and the

6. 344 F.2d at 978, 52 CCPA at 1289.

present case on the other. The fact here is that the prior art is not merely silent on the matter of weld line toughness, but appellant has proved that the closest blends disclosed in the prior art possess *inferior* weld line toughness. In this sense, the present case is closer to In re Ackermann, supra, wherein the claims were drawn to a compound which in its pure state was a superior optical brightener for polyester fibers. The prior art disclosed homologues of the claimed compound and provided the suggestion for modifying the homologues to form the compound which was claimed. However, appellants proved that not only was the pure form of the compound a superior brightener as compared to the impure form, but also that the claimed pure compound was a much better brightener than the prior art homologues even in their pure state. Finding the improvement to be unexpected, the court concluded that the subject matter as a whole would not have been obvious. Balancing the prima facie case of obviousness made out by the Patent Office in the present case against appellant's objective evidence of nonobviousness, In re Fenton, 451 F.2d 640, 643, 59 CCPA ——, —— (1971), we conclude that the same may be said of the subject matter of appealed claim 10.

In *Papesch,* supra, the court held a compound and its properties to be inseparable and that proof of new or improved properties is probative of the nonobviousness of the compound. See also In re Ruschig, 343 F.2d 965, 52 CCPA 1238 (1965). We are aware of Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 341 F.Supp. 1303 (E. D.N.Y.1972), in which Judge Dooling expressed the view that a compound is effectively placed in the public domain when there is ample motivation to make it regardless of the properties it may possess. Under his approach, newly appreciated or enhanced properties may give rise to valid patent property in the methods of using the compound which flow from the discovered properties but could have no impact on the patentability of the compound per se. With due respect to his conclusions reached after careful and exhaustive analysis of many cases involving this issue, we reaffirm the position taken in *Papesch.* To give meaning to the language of 35 U.S.C. § 103 which speaks to the subject matter "as a whole," we feel weight must be given the properties of a compound or composition of matter. See Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1103 (5th Cir. 1972).

■ In the present case, one of ordinary skill in the art would have expected to modify Halliwell according to the tenor of the Rees suggestion and achieve a blend which would show some improvement in blend toughness. Instead, appellant has discovered that that expectation or assumption does not represent the whole truth. For some unanticipated reason, the blend so produced, not the mixture on paper defined in structural chemical terms, has an exceptional resistance to weld line fracture. This is not, in our opinion, the same composition suggested by Halliwell and Rees. We are satisfied that appellant has provided evidence which undermines the assumptions upon which the case for prima facie obviousness rests. Accordingly, the tentative conclusion of obviousness based on Halliwell and Rees must give way to a conclusion of nonobviousness. The rejection of claim 10 is reversed.

The board's decision is affirmed with respect to claims 1 through 8 and reversed with respect to claim 10.