**Application of William L. ALBRECHT and Robert W. Fleming.**

**Patent Appeal No. 75–503.**

United States Court of Customs and Patent Appeals.

May 1, 1975.

---

8. For further discussion, see In re Albrecht, Cust. & Pat.App., 514 F.2d 1389, decided concurrently herewith.

George W. Rauchfuss, Jr., New York City, Eugene O. Retter, Cincinnati, Ohio, attorneys of record, for appellant; Sidney W. Russell, Arlington, Va., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, LANE, and MILLER, Associate Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 1–8 of appellants' application serial No. 833,718, filed June 16, 1969, for "Bis-Basic Esters and Amides of Carbazole."[1] We reverse.

The compounds of appellants' invention, the specification states, "can be administered to animals, such as warm-blooded animals and particularly mammals, for their prophylactic or therapeu-

---

[1]. In re Albrecht, Cust. & Pat.App., 514 F.2d 1385, a related appeal decided concurrently herewith, involves, *inter alia*, the obvious-ness under § 103 of certain bis-basic esters and amides of dibenzothiophene which are also disclosed as having antiviral activity.

tic antiviral effects by conventional modes of administration, either alone, but preferably with pharmaceutical carriers." Further, the specification discloses:

Inter alia, the active ingredients induce the formation of interferon when host cells are subjected to such ingredients, e. g., contract of an active ingredient with tissue culture or administration to animals. Thus, these active ingredients can be used as antiviral agents for inhibiting or preventing a variety of viral infections by administering such an ingredient to an infected animial, e. g., warm-blooded animal, such as a mammal, or to such animal prior to infection. Illustratively, the compounds can be administered

to prevent or inhibit infections of: picornaviruses, e. g., encephalomyocarditis; myxoviruses, e. g., Influenza $A_0$ $PR_8$; arboviruses, e. g., Semliki Forest; and poxviruses, e. g., Vaccinia, IHD. When administered prior to infection, i. e., prop[h]ylactically, it is preferred that the administration be within 0 to 96 hours prior to infection of the animal with pathogenic virus. When administered therapeutically to inhibit an infection, it is preferred that the administration be within about a day or two after infection with pathogenic virus.

Claim 1 reads:

A compound of the formula,

wherein:

(A) each of $R^1$ and $R^2$ is hydrogen, (lower) alkyl, cycloalkyl of 3 to 6 ring carbon atoms, alkenyl of 3 to 6 carbon atoms having the vinyl unsaturation in other than the 1-position of the alkenyl group, or each set of $R^1$ and $R^2$ taken together with the nitrogen atom to which they are attached is pyrrolidino,piperidino,N-(lower) alkylpiperazino, or morpholino;

(B) each A is alkylene of 2 to about 8 carbon atoms and separates its adjacent Y and amino nitrogen by an alkylene chain of at least 2 carbon atoms;

(C) each Y is oxygen, or N–R wherein R is hydrogen, methyl or ethyl; and

(D) $R^3$ is hydrogen or (lower) primary ·or secondary alkyl, or an acid addition salt thereof.

Claims 2 and 3, like claim 1, are generic to both the esters and amides of car-

bazole. Claims 4–8 are specific to certain bis-basic esters of carbazole. Claims 9–15 have been allowed.

### The Prior Art

The sole reference relied upon by the examiner and the majority of the board to support the rejection under 35 U.S.C. § 103 is R. R. Burtner et al. (Burtner), 62 J.Am.Chem.Soc'y 527–32 (1940). The reference relates to a study of the local anesthetic activity of certain carbazole, dibenzofuran, and dibenzothiophene derivatives. Among the compounds tested were certain mono-basic esters of carbazole, although no bis-basic esters of carbazole were disclosed.

The only bis-basic ester disclosed was a bis-basic ester of dibenzofuran. The article states:

Since this paper was presented, bis-(β-diethylaminoethyl)-dibenzofuran-

2,8-dicarboxylate dihydrochloride, m. p. 251–253 °, has been prepared and found to be only faintly active at a concentration of 5%.

When renamed according to the ring numbering system employed by appellants,[2] the compound is bis($\beta$-diethylaminoethyl)dibenzofuran-3,6-dicarboxylate dihydrochloride.

With respect to the compounds studied, the reference states:

> they all caused more or less irritation of the cornea and conjunctiva, the extent of the damage depending on the concentration. The pathological changes were conjunctivitis, chemosis, opacity of the cornea and intense secretion with consequent ectropion.

\*   \*   \*   \*   \*   \*

> \* \* \* As might have been predicted from the experiments on the rabbit cornea each of the compounds thus examined was more or less irritating and painful on injection [in connection with action on human skin].

> The irritating effects of the entire group of compounds appear to be inherent to the nucleus involved, since meticulous purification, variation of the substituent groups and changing the method of synthesis does not materially alter the situation.

\*   \*   \*   \*   \*   \*

> \* \* \* All of these compounds were more or less irritating to the rabbit's eye and to human skin, so that they cannot be regarded as useful anesthetics.

## The Rejection

Claims 1–8 stand rejected under 35 U.S.C. § 103 on the Burtner reference. The examiner noted Burtner's disclosure of the powerful local anesthetic property of certain prepared mono-$\beta$-aminoethyl carboxylates of carbazole and that the corresponding dibenzofuran and dibenzothiophene compounds were less effective. The further disclosure, it was argued, of the subsequently prepared bis($\beta$-diethylaminoethyl)dibenzofuran-2,8-dicarboxylate as a minimally active local anesthetic "stands as an adequate suggestion to the skilled pharmacist to prepare the claimed bis-($\beta$-diethylaminoethyl)-carbazole-3,6-dicarboxylate as a more active anesthetic than the known dibenzofuran."

Then, after noting that appellants had made no showing that the claimed compounds and the compounds disclosed in Burtner "do not both evidence anti-viral and anesthetic properties," the examiner concluded:

> Where such closely structurally related compounds are concerned, actual unexpected *differences* in properties are required to overcome a prima facie case of obviousness. Even though the present compounds may exhibit an unexpected property as anti-virals, they are obvious as anesthetics. In re Hoch, [57 CCPA 1292, 428 F.2d 1341,] 166 U.S.P.Q. 406 [1970]. In re Mod, [56 CCPA 1041, 408 F.2d 1055,] 161 U.S.P.Q. 281 [1969]. In re [De] Montmollin, et al., [52 CCPA 1287, 344 F.2d 976,] 145 U.S.P.Q. 416 [1965]. In re Huellmantel, [51 CCPA 845, 324 F.2d 998,] 139 U.S.P.Q. 496 [1963].

2. The reference ring numbering system is:

whereas appellants' ring numbering system is:

In an advisory action of January 27, 1972, the examiner withdrew his rejection of certain of appellants' claims as a result of a letter of November 24, 1971 and an accompanying affidavit submitted by inventor Fleming which purports to show substantial antiviral activity for the claimed bis(3-diethylaminopropyl)carbazole-3,6-dicarboxylate and the absence thereof in the closest prior art compound, bis(β-diethylaminoethyl)dibenzofuran-2,8-dicarboxylate.[3]

A majority of the board affirmed the examiner's rejection, stating that, in its opinion, "the reference provides a strong *prima facie* case of obviousness." Adopting in substance the reasoning of the examiner, the majority was of the opinion that the facts reported in Burtner

> as contradistinguished from the mere *opinion* reached therefrom  *  *  * provided clear incentive to one of merely ordinary skill in this art, at the time of the invention in question, to prepare and test additional *bis*-esters of carbazole of precisely the class claimed by Appellants, in the reasonable hope and expectation that they would have a desirable balance of relatively effective anesthetic potency coupled with relatively low toxicity vis-a-vis cocaine, one of the major traditional local anesthetics.

Examiner-in-Chief Serota, in a dissenting opinion, differed from the majority and the examiner in his interpretation of Burtner, arguing that it "provides no incentive for the reader thereof to make any variants of the compounds there disclosed." He had the following additional comments relative to Burtner and the propriety of the rejection based thereon:

> While it may be true that the article discloses monoesters of diester compounds falling within the claims on appeal, and it additionally states that *bis*-(β-diethylaminoethyl)-dibenzofuran-2,8-dicarboxylate dihydrochloride was made, there is inadequate basis

for a finding of obviousness. In the light of the authors' conclusion that the compounds studied lack utility for the sole use disclosed, as an anesthetic, as well as the other negative findings with respect to the compounds discussed, I am not convinced that the worker in the art based upon the Burtner et al. article would make the *bis*-basic esters here claimed. The single disclosure that a particular monoester is more potent and less toxic than cocaine, in my opinion, is not a sufficient basis to provide the necessary impetus to a worker in the art to make the bis-compounds of those disclosed. In my view, a worker in the art after having read the Burtner et al. article who thereafter proceeds to make a variant of the compounds disclosed and discovers a completely unrelated utility for those undisclosed compounds, may well be entitled to a patent in the absence of other art.

In a request for reconsideration, filed March 25, 1974, appellants requested the board to clarify and complete its opinion, stating:

> the majority opinion fails completely to give any consideration whatsoever to the record in this application to the Rule 131 [sic Rule 132] Affidavit showing establishing the unobvious properties of the claimed compounds *vis-a-vis* the prior art compounds. Assuming, without admitting only for the purpose of establishing the correctness of appellants requesting clarification and completion of the Decision, that the prior art reference establishes a *prima facie case* of obviousness, it is still apparent that the Decision is incomplete because it fails to give consideration to the claimed invention "as a whole" (35 U.S.C. 103) as is required under the patent statutes and as so construed by well established case law. In re Lambooy, 49 C.C.P.A. 985, 300 F.2d 950, 133 U.S.P.Q. 270, 780 O.G. 703 (1962); In re Petering et al., 49 C.C.P.A. 993,

---

**3.** The test compound was identified in the affidavit as "Bis(β-diethylaminoethyl)dibenzofuran-3,6-dicarboxylate." This erroneous identi-fication of the reference compound was corrected in a subsequent affidavit dated February 14, 1972.

301 F.2d 676, 133 U.S.P.Q. 275, 780 O.G. 710 (1962); In re Papesch, 50 C.C.P.A. 1084, 315 F.2d 381, [137] U.S.P.Q. 43, 794 O.G. 14 (1963) and many others.

In its decision on the request for clarification, the board majority maintained that it had given due weight to the affidavits which it deemed "insufficient to overcome the strong *prima facie* case of obviousness * * * presented by the Examiner."

### OPINION

The sole issue is whether a novel chemical compound is unobvious within the meaning of 35 U.S.C. § 103 if it is discovered after synthesis to have a new and advantageous property not possessed by a prior art compound, notwithstanding the fact that it may possess a property known to be possessed by the known compound.

This court has several times recently expressed its position on the role of the properties of chemical compounds in assessing their obviousness under § 103. See In re Taborsky, 502 F.2d 775 (CCPA 1974); In re Blondel, 499 F.2d 1311 (CCPA 1974); see further In re Murch, 464 F.2d 1051, 59 CCPA 1277 (1972); In re Lintner, 458 F.2d 1013, 59 CCPA 1004 (1972).

■ Our position is that from the standpoint of patent law a compound and all of its properties are inseparable. In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963). A finding of unobviousness in consequence depends on comparing the old and new compounds as wholes, inclusive of their properties. In re Papesch, supra.

The board majority, appellants maintain, has failed to apply this standard by affirming the rejection of claims 1–8 in disregard of the Rule 132 affidavits which show the presence of antiviral activity in the claimed compounds and the absence thereof in the closest prior art compound. Appellants note in their brief:

It has been held in numerous cases that the discovery of new and unobvious properties in the claimed compounds rebuts even a *prima facie* case of obviousness where the art is silent on that property or the prior art is shown not to possess that property. In re Papesch, cited *supra*; In re Hoch, 57 C.C.P.A. 1292, 428 F.2d 1341, 166 U.S.P.Q. 406 (1970); In re Mod, 56 C.C.P.A. 1041, 408 F.2d 1055, 161 U.S.P.Q. 281 (1969); In re Stemniski, [58] C.C.P.A. [1410], 444 F.2d 581, 170 U.S.P.Q. 343 (1971); Commissioner of Patents v. Deutsche Gold-un[d] Silber Scheideanstalt Vormals Roessler, 397 F.2d 656, 157 U.S.P.Q. 549 (D.C.Cir. 1968).

After apparently conceding that appellants' claimed compounds have been adequately shown to possess "an antiviral activity not possessed by the reference compounds," the solicitor argues, "the showing of such an additional activity does not overcome the *prima facie* case." Cited as support for this position is In re Mod, 408 F.2d 1055, 56 CCPA 1041 (1969), wherein we stated:

Inasmuch as the * * * compounds * * * possess a close structural relationship and it is not denied that they have a *specific, significant* property in common * * * we do not regard the additional * * * activity * * * sufficient ground to hold that the subject matter as a whole is unobvious.

The assertion that the claimed compounds are prima facie obvious in view of the compounds of the prior art is thus buttressed in the solicitor's view by appellants' failure to produce evidence comparing the *anesthetic activity* of the claimed compounds with those of the prior art, because Burtner allegedly stands as an adequate suggestion to the skilled pharmacist to prepare the claimed carbazole dicarboxylates to obtain more effective *anesthetics* than the prior art compounds. The solicitor argues:

The failure of appellants to produce evidence comparing the anesthetic ac-

tivity of their compounds with those of the prior art, buttresses the conclusion that appellants' compounds are *prima facie* obvious over the compounds of the prior art. See In re Hoch, 57 CCPA 1292, [428 F.2d 1341] 166 USPQ 406, wherein the Court stated in part:*

> *The Court stated that a showing of "substantial, actual differences in properties" would overcome a *prima facie* case of obviousness; apparently meaning a showing of no property in common, or a showing of significant difference in degree of a common property.
>
> * * * the prima facie case, at least to a major extent, is based on the expectation that compounds which are very similar in structure will have similar properties. Therefore, to *overcome* the prima facie case, it must be shown that the expectation on which it is based was in fact unsound * * *.

In fact, appellants have not overcome the *prima facie* case because they have not "shown that the expectation on which it is based was in fact unsound."

■ We think the solicitor's interpretation of this court's prior decisions on the *problem of "obviousness"* of new and useful chemical compounds is in error. In re Mod, supra, cited by the solicitor, involved the obviousness of new morpholides of fatty acids which were disclosed as possessing antimicrobial activity against a variety of microorganisms. The prior art disclosed compounds closely related in structure and asserted insecticidal properties therefor. The court held that applicants' discovery of an additional property did not "necessarily" render the claimed compounds unobvious. Left unanswered by the court's disposition of the case was whether the discovery of an additional property *in a given factual setting* would require a contrary conclusion on the question of the obviousness of the subject matter as a whole.

Our subsequent opinion in In re Stemniski, 444 F.2d 581, 58 CCPA 1410 (1971), sheds further light on the issue. The claims there were directed to compounds which were discovered to be useful as high-temperature anti-oxidants in lubricant and heat-exchange fluids. The claims were rejected on primary references which disclosed analogs of the claimed compounds in conjunction with a secondary reference which purported to teach the equivalency between the claimed and primary reference compounds. Although it was noted that the primary references did disclose that the compounds "polymerize (to form compounds of unspecified use), and also are reducing agents for silver nitrate (e. g., are capable of being oxidized)," the court nevertheless proceeded on the premise "that the primary references neither disclose nor suggest a usefulness" for the analogs. It was further observed that both the claimed compounds and the reference compounds were *in fact* equally effective anti-oxidants.

This court, in disaffirming the inconsistent views expressed in two of its prior decisions, In re Henze, 181 F.2d 196, 37 CCPA 1009 (1950); In re Riden, 318 F.2d 761, 50 CCPA 1411 (1963), reversed the decision of the board, commenting:

> How can there be obviousness of structure, or particularly of the subject matter as a whole, when no apparent purpose or result is to be achieved, no reason or motivation to be satisfied, upon modifying the reference compounds' structure? Where the prior art reference neither discloses nor suggests a utility for certain described compounds, why should it be said that a reference makes obvious to one of ordinary skill in the art an isomer, homolog or analog of related structure, when that mythical, but intensely practical, person knows of no "practical" reason to make the reference compounds, much less any structurally related compounds?

444 F.2d at 586, 58 CCPA at 1417.

■ We are of the opinion that a novel chemical compound can be *nonobvious* to one having ordinary skill in the art notwithstanding that it may possess a known property in common with a

known structurally similar compound. Where, as in this case, it is disclosed that the prior art compounds "cannot be regarded as useful" for the sole use disclosed, as an anesthetic, we fully agree with the opinion of Examiner-in-Chief Serota that a person having ordinary skill in the art would lack the "necessary impetus" to make the claimed compounds. Compare In re Mod, supra, where the common property which the prior art compound was known to possess was a specific *significant* property. See In re Lintner, 458 F.2d 1013, 1016, 59 CCPA 1004, 1007 (1972).

Appellants' affidavit evidence, we note, shows that the additional advantageous activity disclosed for the claimed compounds, namely antiviral activity, is not in fact possessed by the prior art analog. That a claimed novel compound possesses a certain advantageous activity which is not in fact possessed by a prior art compound is itself evidence of the nonobviousness of the subject matter as a whole. See In re Stemniski, supra, and In re Papesch, supra.

We observe, furthermore, that the antiviral activity discovered for the claimed compounds is totally dissimilar to any activity previously disclosed for the prior art analogs. A newly discovered activity of a claimed novel compound which bears no material relationship to the activity disclosed for the prior art analogs is further evidence, not to be ignored, of the nonobviousness of the claimed invention.

In view of the foregoing, the board decision affirming the rejection of claims 1–8 is reversed.

Reversed.