58 CCPA

**Application of Richard W. MUCHMORE.**

**Patent Appeal No. 8356.**

United States Court of Customs and Patent Appeals.

Nov. 25, 1970.

Lyon & Lyon, James W. Geriak, Douglas E. Olson, Los Angeles, Cal., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. E. Martin, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Associate Judges, and RE, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, which affirmed the examiner's rejection of all claims in appellant's application serial No. 309,384, filed September 17, 1963, for "Heat Treatment Process." We affirm.

The specification states that cross-linking of crystalline polymers substantially reduces the ultimate elongation [1] of such polymers, the degree of reduction being related to the degree of cross-linking. It also states that the addition of fillers, particularly reinforcing fillers, to cross-linked crystalline polymers further reduces ultimate elongation. Foaming such polymers, with or without fillers, is also said to affect elongation adversely.

Appellant's invention, as broadly described in the specification, is a process for improving or restoring polymer elongation properties, which have been reduced by cross-linking, foaming, addition of fillers, or a combination of these factors. The process is a simple one, comprising heating a shaped object made from such a polymer to a temperature above the crystalline melting point and then rapidly cooling or quenching the object. The specification states, "However, in general and not by way of limitation, a cooling rate of at least 250°C. per minute should be used." None of the claims on appeal recite this minimum cooling rate.

All of the claims before us stand rejected for obviousness under 35 U.S.C. § 103. Some of the claims stand additionally rejected under 35 U.S.C. § 112, a rejection which our disposition of this case renders it unnecessary for us to consider. However, because there is sometimes a close relationship between indefiniteness

---

1. Ultimate elongation is the amount of permanent stretch before rupture, expressed as a percentage of original length.

under § 112, second paragraph, and obviousness under § 103, we point out that there was no rejection for indefiniteness based on the presence of the word "rapidly" in the claims, the importance of which word will become apparent shortly.

We analyze the claims in two groups, choosing a narrow claim from each group as representative. Since we agree with the board's conclusion of obviousness as to these narrow claims, the broader claims must likewise be obvious.

Representative of the group of claims reciting the presence of a filler in the polymer is claim 14, which depends from claim 33. Written in independent form, claim 14 reads:

A process comprising

heating a shaped article comprising cross-linked crystalline polyethylene containing an inorganic *filler* to a temperature above its crystalline melting temperature and

*rapidly* cooling said article to a temperature below its crystalline melting temperature. (Emphasis added.)

The board found this claim obvious over Precopio et al.,[2] which discloses the use of various inorganic fillers in cross-linked crystalline polyethylene and polyethylene blends. Precopio describes a method of fabricating articles of filled polyethylene, including the steps of heating the material to a temperature above the crystalline melting point, and then (as least impliedly) allowing it to cool. No rate of cooling is specified.

Appellant states in his brief that "The primary difference between the present invention and the prior art may be stated in two words: rapid cooling." This limitation, he contends, renders the claimed invention unobvious. The board disagreed, saying:

Since we are not *convinced* that rapid cooling gives any *materially improved results* over ordinary cooling, as shown

by Precopio et al, we conclude that the claims are not patentable over this reference, under 35 U.S.C. 103. (Emphasis ours.)

Implicit in this language is the board's preliminary conclusion that appellant was obliged to present convincing evidence of superior results in order for the claims to be held unobvious over Precopio. In view of the facts that (1) the claimed process is very similar to Precopio's in terms of steps, materials and objectives, and (2) there was no definite theoretical basis from which practical advantages of appellant's process could be deduced with any degree of certainty, we find that the board was correct in requiring a demonstration of unobviousness through evidence, although not necessarily evidence of unexpectedly superior physical or chemical properties.[3] The route chosen by appellant to demonstrate unobviousness in this case was by proof of unexpectedly superior elongation properties obtained with his method as compared to those obtained through prior art methods. Appellant relied on evidence in the form of examples in the specification and an affidavit submitted after the board's first decision and considered by the board in its opinion on reconsideration.

Turning first to the specification examples, example 1 and its accompanying table describe experiments wherein the process of claim 14 was performed using a high density polyethylene, two samples of which contained silica fillers in different proportions, and two of which contained antimony trioxide fillers in different proportions. Ultimate elongation readings at 22°C. were from 140% to 799%, depending largely on the degree of cross-linking in the polyethylene, which in turn was a function of the radiation dose applied before the process of the claim was performed. For a 20 megarad dose, for example, the ultimate elongation readings at 22°C. were from

---

2. U. S. Patent 2,888,424, issued May 26, 1959.

3. There are other routes: commercial success, solution of long-felt need, prior art references teaching away from the invention, less expensive operation, etc.

424% to 509%.[4] Example 3 and its accompanying table describe the results of experiments wherein the polyethylene of example 1 contained carbon black, an inorganic reinforcing filler. Ultimate elongation measurements of from 440% to 475% were obtained.

We turn now to the affidavit submitted by appellant and considered by the board. It describes a comparison experiment involving application of the claimed process and a slow-cooling process to a particular polyethylene containing a particular proportion of a particular silica filler. The claimed process was performed by heating to 150° and immediately quenching in a dry ice-glycerine mixture at –75°C. Ultimate elongation was more than three times higher using the claimed process.

Looking now to Precopio, we find that he presents about 30 examples wherein his process is applied to compositions containing various polyethylenes, inorganic fillers and curing agents. Twelve of these examples report ultimate elongations of 400% or higher, up to 715%, all at room temperature, which is approximately the temperature recited in appellant's examples.

All the foregoing points to the conclusion that, while some specific processes within claim 14 (e. g., the one described in the affidavit) might be said to yield unexpectedly superior results over Precopio's process, the totality of processes covered by the claim, as a class, do not. Many specific processes within claim 14 appear to yield results, in terms of elongation properties, no better than those obtained by Precopio. Since appellant chose to predicate unobviousness on unexpectedly superior elongation properties resulting from his process, it is clear that claim 14 is *too broad in the sense of section 103*, since it reads on both obvious and unobvious subject matter.

Representative of the group of claims reciting a foamed polymer is claim 22. Written in independent form, this claim reads:

A process comprising

heating a shaped article comprising *foamed* cross-linked crystalline polyethylene to a temperature above its crystalline melting temperature and

*rapidly* cooling said article to a temperature below its crystalline melting temperature. (Emphasis added.)

The board found these claims obvious over Precopio and Pooley et al.[5] Pooley discloses a method of preparing foamed cross-linked crystalline polyethylene containing a filler. The process involves heating to above the crystalline melting point, followed by cooling, with no rate of cooling specified. The product is stated to have excellent dimensional stability, wear resistance and resilience, but elongation properties are not specifically mentioned. Here again, because of the close similarity between the claimed process and Pooley's, we find that it was proper for the board to require evidence of unobviousness. Again appellant chose to demonstrate unobviousness by evidence of unexpectedly superior elongation properties.

The evidence concerning elongation properties of foamed polymers treated according to the method of claim 22 is solely in example 2 of the specification and its accompanying table. The example and table describe experiments with two foamed cross-linked polyethylene blends. Objects made from these blends and treated according to appellant's method were stated to have ultimate elongations of about 455%, but there is no comparative evidence of any of the properties of similar objects treated according to Pooley's process.[6]

---

4. The table also lists values for "non-quenched" samples, but these non-quenched samples were apparently not heat-treated at all, and hence their relevance here is slight.

5. U. S. Patent 3,098,832, issued July 23, 1963.

6. As in table 1, table 2 recites elongation values for "non-quenched" articles, but again such articles appear to be non-heated and hence have little relevance to the issue before us.

Accordingly, there is nothing of record tending to show that even a single process meeting the terms of claim 22 would yield unexpectedly superior results as compared to the Pooley process. We must conclude that appellant has not shown the subject matter of claim 22 to be unobvious.

As mentioned above, since the narrower claims were properly rejected for obviousness, the rejection of the broader claims on that ground must also be affirmed.

Affirmed.