**Application of Francis E. COSTELLO.**
**Patent Appeal No. 8901.**

United States Court of Customs and Patent Appeals.
June 28, 1973.

rejection of claims 1–39 in appellant's application serial No. 588,725,[1] filed October 24, 1966, for "Plating Process and Bath." At oral argument appellant withdrew the appeal with respect to claims 14, 15 and 36–39. Accordingly, the appeal is dismissed as to these claims. All of the claims remaining under consideration, i.e. claims 1–13 and 16–35,[2] were rejected under 35 USC 103 as unpatentable over Brenner et al.[3] Claims 7, 17, 18 and 20 were additionally rejected under 35 U.S.C. § 112. We affirm in part and reverse in part.

## The Invention

The invention relates to an alkaline electroless bath, useful for applying a nickel coating to articles at low temperatures. Such conditions permit the plating of plastic articles without danger of heat distortion.

Claims 1 and 7 are representative of the bath compositions:

1. An electroless nickel bath for applying a nickel coating to articles, comprising water, nickel sulphate, nickel chloride, reducing agent anions for reducing the nickel ions to a metal, and a stabilizing agent for controlling the operating speed of the reducing agent, the bath having an alkaline pH, and the ratio by weight of nickel ions to reducing agent anions being about 1 to 2.7.

7. The bath of claim 1 including for each gallon of bath about ¾ gallon of water, about 160 to 640 c.c. of ammonium hydroxide, about 1⅝ to 6½ ounces of nickel sulphate, about 4 to 16 ounces of nickel chloride, about 9⅝ to 38½ ounces of sodium citrate, about 6¾ to 27 ounces of ammonium chloride, and about 4 to 24 ounces of sodium hypophosphite.

John F. A. Earley, Philadelphia, Pa., James W. Dent, Washington, D. C., attorneys of record, for appellant

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals sustaining the

---

1. A continuation-in-part of application serial No. 504,192, filed October 23, 1965.

2. While the examiner omitted claims 20 and 21 from the rejection in his Answer, the board included these claims in the rejection, and appellant, although listing this action as a reason of appeal, has not argued the matter in his brief. Accordingly, we will treat the rejection in the same manner as the board.

3. U.S. 2,532,283, issued December 5, 1950.

Sodium hypophosphite acts as the reducing agent and the combination of sodium citrate and ammonium chloride as a stabilizing agent.

The method of coating articles employing this bath is also claimed, as illustrated by claim 12:

> 12. A method of applying a nickel coating to articles comprising treating the articles with a bath of water, nickel sulphate, nickel chloride, a reducing agent for reducing the nickel ions to a metal, and a stabilizing agent for controlling the operating speed of the reducing agent.

A third facet of the invention is found in those claims drawn to a replenish solution for restoring the bath to original constituent levels.

### The Rejection

Brenner et al. (Brenner) disclose alkaline electroless baths for plating *metallic* surfaces with nickel. The bath constituents include nickel salts such as nickel chloride and nickel sulfate to provide nickel ions, sodium hypophosphite to reduce the nickel ions to metal, ammonium hydroxide to maintain alkalinity, and a combination of sodium citrate and ammonium chloride to hold the nickel salts in solution. In the exemplary bath compositions the nickel salts and sodium hypophosphite are employed in ratios ranging from 10:1 to 3:10, 3:1 being preferred. According to the undisputed calculations supplied by the solicitor, these values represent a range of hypophosphite anion to nickel ion of 0.83:1 to 8.3:1. In the Brenner baths a relatively low concentration of hypophosphite ion (0.07 to 7.5 parts by weight/100 total parts) is employed in contradistinction to the prior art use of high concentrations. The baths are preferrably maintained at about 90° to 100° C, although the broad range of 20° to 100° C is said to be operational.

It was the examiner's position that because Brenner disclosed baths containing the same ingredients "within ranges which include the values called for by these claims," it would be obvious to select "a specific set of numerical values from these operable variables." The possibility of low bath temperatures even in the Brenner process was emphasized. Appellant's arguments concerning the prior art problems associated with the plating of plastic articles were "not considered apropos" inasmuch as "none of the claims are directed specifically to plating plastics."

In sustaining this rejection, the board stressed the overlap of the reference ranges and those of appellant. Alleged advantages in stability, rate of deposition, type of substrate, or temperature of use were deemed "patentably immaterial * * * in the absence of a *compositional* distinction in the claims." Appellant's contentions that Brenner was unaware that bath compositions within the claimed ranges would plate plastics at room temperatures were dismissed with the statement that:

> * * * Appellant has not shown that there are critical limits within the reference disclosure which assure unobvious results, and that outside these limits such results cannot be obtained.

The affidavit of Dr. Narcus, an expert in the field, on the long-standing problem of plating plastic and the solution, in his opinion, by appellant's baths, was found to be irrelevant on the basis that the baths and operating conditions had in fact been disclosed by Brenner.

Claim 7 was additionally rejected under 35 U.S.C. § 112 (paragraph one, according to the solicitor's brief) as being based on an insufficient disclosure. Claims 17, 18 and 20 were rejected (under 35 U.S.C. § 112 according to the board and under paragraph two of 35 U.S.C. § 112 according to the solicitor) as being substantial duplicates of one another. In view of our disposition of the § 103 issue infra, we need not consider these rejections.

### OPINION

Looking first to the § 103 rejection, we must agree that the Patent Office

has established a case of prima facie obviousness for the claimed subject matter. Brenner discloses all of appellant's bath constituents and general ranges for the same which encompass the claimed nickel: hypophosphite ratio and at least some of the hypophosphite concentrations. Although the emphasis in Brenner is on "relatively low" concentrations of hypophosphite to avoid various disadvantages of high concentrations, it is taught that in alkaline baths the rate of deposition is proportional to the hypophosphite concentration to a substantial extent. It is also suggested to replenish the supply of hypophosphite during operation. As for the process, Brenner discloses the use of bath temperatures as low as 20° C, although higher rates of deposition and better deposits are said to be obtained at 90° to 100° C. Moreover, the "articles" being coated in the claimed process cannot be distinguished from the metallic surfaces plated by the Brenner process.

But that is not the end of the matter. There is no justification for simply ignoring appellant's allegations of unexpected results. See In re Freeman, 474 F.2d 1318 (CCPA 1973). The broad teachings of Brenner cannot preclude the establishment of unobviousness for specific bath compositions not anticipated thereby. Evidence of properties such as improved stability, higher rate of deposition and capacity to satisfactorily plate plastic articles may well provide adequate rebuttal to the prima facie case established by the Patent Office.

The solicitor contends there is no objective evidence in the record to support the claims of either increased stability or greater deposition rate for appellant's bath compositions. We agree. We can find no comparisons with any specific Brenner bath compositions which might even tend to establish any

distinction for the claimed compositions on these bases. Nor is there any indication that the alleged differences would be other than expected. Under *Freeman* the establishment of both elements is crucial to any case for unobviousness based on unexpected results.

But the solicitor's position on the capacity of the claimed compositions to plate plastic articles without heat distortion presents a totally different situation. It is acknowledged that Brenner does not disclose deposition on such a substrate. Furthermore, the Brenner articles which were submitted by appellant during prosecution [4] are alleged to provide concrete evidence that the Brenner baths were admittedly not capable of plating plastic satisfactorily. Hence there is a potential difference over the prior art.

■ The argument that both the bath and method claims cover the coating of metal and are therefore too broad in the sense of 35 U.S.C. § 103 cannot be accepted in toto. We agree that appellant's method claims, all of which are broadly drawn to "applying a nickel coating to *articles*" (emphasis added), are not rendered unobvious by a showing that plastic substrates may also be coated. Hence the method claims still read on obvious subject matter. In re Muchmore, 433 F.2d 824, 58 CCPA 719 (1970). The 103 rejection of method claims 12, 13 and 32–35 must be affirmed.

■ The same does not hold true, however, for the composition claims. All properties must be considered in determining the obviousness of a composition. In re Murch, 464 F.2d 1051, 59 CCPA 1257 (1972); In re Freeman, supra.

Turning to the Brenner articles previously mentioned, we find that in November 1947 Brenner stated, in discuss-

4. Brenner et al., "Nickel Plating on Steel by Chemical Reduction," Journal of Research of the National Bureau of Standards, Vol. 37, July 1946.
Brenner et al., "Deposition of Nickel and Cobalt by Chemical Reduction,"
Journal of Research of the National Bureau of Standards, Vol. 39, November 1947.
Brenner, "Electroless Plating Comes of Age," Metal Finishing, November and December 1954.

ing potential surfaces for deposition using his new baths:

> Plastic surfaces are noncatalytic, and none of the above procedures will initiate the nickel deposition. In an endeavor to plate plastics, several types were tried in the hot nickel solution. Even when precleaned with organic solvents and acids, the plastics remained noncatalytic. No deposition occurred on the surface when immersed in highly concentrated solutions. When a plastic was silvered prior to immersing in the nickel solution, satisfactory deposition failed to occur. This failure was due primarily to the silver flaking from the plastic in the hot solution. Other methods of applying a metal film to the plastic might be more successful.

In the later article in November 1954 he noted:

> Subsequent to the publication of our papers in 1947, several laboratories found that nickel could be deposited on glass and plastics by the electroless process.

All of this leads us to the conclusion that the specific Brenner bath compositions were not capable of plating plastic. The capacity of appellant's baths to do so satisfactorily is an additional property.

Nor can evidence relevant to the unexpected nature of this newly discovered property be ignored. The Brenner article of November 1954 makes it clear that even the techniques developed by others were far from satisfactory for plastic substrates. The Narcus affidavit attesting to the long felt need for baths of this type must also be given weight. The only remaining qualification is that the unexpected properties actually established be commensurate in scope with the claimed compositions.

Here the specification provides the evidence of plating plastic articles with appellant's bath compositions. But in the only examples which actually demonstrate such plating the bath compositions are restricted not only to a nickel

ion: hypophosphite ratio of 1:2.7 but also to a specific ratio of each of the other components to one another. These limitations have also been stressed by appellant in distinguishing over Brenner. Accordingly, we consider only those claims fully defining such limits of the bath compositions to be commensurate in scope with the demonstrated unexpected properties. Claims 6, 10, 11, 22, 24–28 and 30 satisfy this requirement. The § 103 rejection is reversed as to these claims.

Remaining composition claims 1–5, 7, 8, 9, 16–21, 23, 29 and 30 do not recite the essential limitations. Hence the rejection of these claims must be affirmed.

In summary, the § 103 rejection is affirmed as to claims 1–5, 7, 8, 9, 12, 13, 16–21, 23, 29 and 31–35 and reversed as to claims 6, 10, 11, 22, 24–28 and 30. The appeal is dismissed as to claims 14, 15 and 36–39.

Modified.