57 CCPA

### Application of Paul E. HOCH.
### Patent Appeal No. 8323.

United States Court of Customs
and Patent Appeals.
July 30, 1970.

Raymond F. Kramer, Buffalo, N. Y., Donald C. Studley, William J. Schramm, Niagara Falls, N. Y., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals [1] affirming the rejection of claims 3–6 of application serial No. 233,885, filed October 29, 1962, entitled "Novel Chlorinated Benzoyl Chloride and Derivatives Thereof and Methods of Preparing Same." [2] We affirm.

Claim 3 is drawn to a genus of three compounds—4, 5, 6, α, α, α-hexachloro-3-toluic acid and the corresponding acid chloride and anilide—which have the following structural formulae:

Claims 4–6 are species claims drawn to the acid chloride, acid, and anilide, respectively. The usefulness of these compounds as herbicides is emphasized by appellant.

The references expressly relied on to support the rejection are:

Molotsky        2,946,817      July 26, 1960
French Patent   820,696      Aug. 2, 1937

Claims 3 and 5 are rejected as unpatentable over Molotsky and claims 3, 4, and 6 as unpatentable over the French pat-

---

1. Consisting of Asp, Lidoff, and Stone, Examiners-in-Chief, opinion by Asp.

2. Although this application is stated to be "a continuation in part of * * * application SN 818,517, filed June 8, 1959" (not of record here), it does not appear that appellant has ever contended that the continuation-in-part is entitled to the filing date of the patent insofar as the subject matter of the appealed claims is concerned.

ent, both rejections having 35 U.S.C. § 103 as their statutory basis.[3]

Molotsky discloses a group of hexachlorotoluene derivatives having the following formula:

[A2367]

wherein $R_1$ is independently selected from the group consisting of hydrogen, aliphatic, cycloaliphatic and aryl radicals, and $R_2$ is independently selected from the group consisting of aliphatic, cycloaliphatic and aryl radicals.

Molotsky states generally that these compounds are useful

as intermediate chemicals, as insecticides, in resin production, as fungicides, as vulcanizing agents, as accelerators for the vulcanization of rubber, and as solvents.

Of the compounds specifically disclosed by Molotsky the one structurally most similar to those claimed by appellant is the ethyl ester of 4, 5, 6, α, α, α-hexachloro-3-toluic acid which differs in structure from appellant's acid, supra, only in that the former has -COOC$_2$H$_5$

and the latter -COOH in the 3-position. Thus, Molotsky's compound is the ethyl ester of appellant's free acid. Molotsky also discloses 2, 3-dicarboxy-4, 5, 6, α, α, α-hexachlorotoluene which is a free acid differing from appellant's acid only in having carboxyl groups in both the 2- and 3-positions, rather than just the 3-position.

The French patent discloses compounds which the board characterized as "analogs of the claimed anilide and acid chloride" (emphasis added), the claimed compounds differing therefrom in that they contain two chlorine atoms in 4- and 5-positions whereas the French patent compounds do not. With respect to the utility of the disclosed compounds, the French patent states:

The chlorides of benzene carboxylic acids containing trichloromethyl groups prepared *according* to the present invention behave as true acid chlorides: they yield esters, anilides, etc., and are important intermediate products in the preparation of dyes, as well as means for the extermination of noxious animals, *treatment of plant diseases*, etc. [Emphasis added.]

The examiner was of the opinion that given Molotsky's disclosure of the ethyl *ester* of 4, 5, 6, α, α, α-hexachloro-3-toluic acid "the concept of the acid would be obvious in the absence of unobvious properties not possessed by the ester * *." The board agreed, adding that Molotsky discloses both *acid* and *ester* derivatives of 4, 5, 6, α, α, α-hexachlorotoluene (although not the specific acid claimed by appellant).

3. There are two other cited references:
   Newcomer 3,014,965        Dec. 26, 1961
                    (filed Apr. 29, 1955)
   Newcomer 3,253,900        May 31, 1966
                    (filed May 15, 1961).
   Appellant complains that although neither of these patents is mentioned in the statement of either of the appealed rejections and although this fact was pointed out in appellant's brief below, the board approved of their use by the examiner "as suggesting that [appellant's] compounds would exert herbicidal action" and characterizing this as a use in a *"minor*

capacity" (emphasis added) to "further support the rejection." Appellant's complaint seems to be justified, and if we did not find the rejections based *solely* on Molotsky and the French patent to be sound, we might well feel constrained to reverse the decision of the board. Where a reference is relied on to support a rejection, whether or not in a "minor capacity," there would appear to be no excuse for not positively including the reference in the *statement of the rejection.*

Taking a similar position with respect to the French patent, the examiner noted that the compounds disclosed in this reference and the anilide and acid chloride claimed here differ only in the presence of two additional chlorines in the latter pair and that the compounds of the patent are disclosed as being useful for "the treatment of plant diseases." The board added that appellant did not appear to challenge the prima facie obviousness of the claimed structures and noted that the French patent suggests the possibility of *poly*chlorination of the disclosed compounds.

Appellant argues that, notwithstanding Molotsky's utility disclosure quoted above, this reference does not teach which of the several utilities mentioned is possessed by the ethyl ester in question or whether all are possessed by it. He also argues that mention of "treatment of plant diseases" in the utility disclosure of the French patent shows that the compounds disclosed in this reference

> have a utility opposite to that of the utility possessed by appellant's compounds; whereas they cure plant diseases, appellant's compounds kill plants.

At the outset, we note that appellant has not attempted to explain what the phrase "treatment of plant diseases" would imply to one skilled in the art. He has merely *asserted* that such use is "contradistinguished" from and "antithetical" to the herbicidal use of the claimed compounds. He has in no way supported his suggestion that compounds useful for the "treatment of plant diseases" (whatever that means) would be expected, because of that usefulness, *not* to be useful as herbicides when applied, perhaps, in greater quantities or to specific plants. On the face of it, "treatment of plant diseases" could mean usefulness in controlling plant-infesting organisms rather than usefulness in obtaining a *direct* beneficial effect on the

plant per se. We are thus not persuaded that herbicidal properties are "contraindicated" by the French patent.[4]

Having considered, on the one hand, the very close structural similarities of the claimed compounds and the reference compounds, the utility disclosures of the references, and the suggestion of polychlorination in the French patent, and, on the other hand, the apparent unobviousness of the utility of the claimed compounds as herbicides, we find that a prima facie case of obviousness has been made out by the examiner.

Appellant attempts to overcome this prima facie case of obviousness by arguing the following:

> Even if said references sufficed to render obvious the structure of appellant's compounds, they, as a matter of law, would not render obvious the compounds themselves (*and all the properties that inhere therein*) under 35 USC 103; for the herbicidal utility of these compounds is contraindicated by these references. In re Lambooy, 49 CCPA 985, 300 F.2d 950, 133 US PQ 270 (1962) and In re Petering and Fall, 49 CCPA 993, 301 F.2d 676, 133 USPQ 275 (1962) cited with approval in In re Papesch, 50 CCPA 1084, 315 F.2d 381, 137 USPQ 43 (1963); In re Huellmantel, 51 CCPA 845, 324 F.2d 998, 139 USPQ 496 (1963); In re Luvisi and Nohejl, 52 CCPA 1063, 342 F.2d 102, 144 USPQ 646 (1965); and In re Ruschig, 52 CCPA 1238, 343 F.2d 965, 145 USPQ 274 (1965). [Emphasis added.]

Reflection on this contention shows it to be appellant's position that if his compounds possess an advantageous *property* which is unobvious (unexpected) in view of the disclosures of the prior art references, then the prima facie case of obviousness necessarily has been overcome and his *compounds* must be held to be unobvious. None of the cited cases, however, explicitly or implicitly supports this proposition. In each, a

---

4. This, of course, is not to say that herbicidal properties *are* indicated by the French patent either.

prima facie case of obviousness was conceded or held to have been established and applicant's proofs, submitted to overcome that prima facie case, related not merely to *unexpected* properties, but rather to unexpected *differences* in properties,[5] i. e., to *actual* differences in the properties of the prior art compounds and the properties of the compounds involved in the appealed claims. Such actual differences in properties are required to overcome a prima facie case of obviousness because the prima facie case, at least to a major extent, is based on the expectation that compounds which are very similar in structure will have similar properties. Therefore, to *overcome* the prima facie case, it must be shown that the expectation on which it is based was in fact unsound—*as* by showing that there are substantial, actual differences in properties.

Inasmuch as the record here is silent as to how the reference compounds and the claimed compounds actually differ in properties, *if at all*, appellant has failed to overcome the examiner's prima facie case of obviousness.[6]

The decision of the board is *affirmed*.

Affirmed.

---

5. As used in these cases, the meaning of "differences in properties" has included *significant* differences in degree of the *same* property amounting to marked superiority.

6. It should be noted, however, that in considering whether a prima facie case of obviousness had been made out we did take into account, inter alia, not only the differences between the structures of the prior art compounds and those claimed, but also the differences in the properties disclosed in the prior art to be possessed by the former and the properties which appellant found to be possessed by the latter, the latter properties being considered notwithstanding appellant's failure to establish actual differences in properties.