NEWMAN, Circuit Judge,
dissenting.
The patent on appeal is directed to the production of .crystalline copolymers of alpha-olefins having four or more carbon atoms, using a catalyst obtained by reacting an aluminum alkyl with a titanium halide; the inventor is Natta et al. (the “Natta '687 patent”). The initial application was filed in 1958, flowing from discoveries that started with the polymerization of ethylene and that have produced new materials that continue to revolutionize the packaging and several other industries. The scientific achievements reflected in these discoveries won a Nobel Prize in 1963 for Dr. Giulio Natta and Dr. Karl Ziegler.
I write in dissent, first because the reexamination here conducted was in violation of the reexamination law as it then existed. Such violation should not be condoned, for the PTO is as bound by the law as are those who practice before it. If this improper reexamination were to be tolerated, as do my colleagues on this panel, it at least warrants strict scrutiny. Yet the panel majority defers to unsupported findings, permits the PTO to ignore all of the expert evidence, and joins in the PTO’s unfair allocation to the inventors of blame for the extreme delays here illustrated.
*1380 The Reexamination Statute before November 2, 2002
Reexamination before 35 U.S.C. § 303 was amended effective November 2, 2002, was available only on certain grounds not considered during the initial examination. The purpose was to protect patentees from the harassment of too-facile reexamination, lest the abuses outweigh the benefits.[1] Reexamination of the Natta '687 patent was not requested by any interested person, but was ordered by the Director of the PTO for the stated reason: “The failure of the Office to consider the entire patent family for potential double patenting issues has created an extraordinary situation for which a Commissioner ordered reexamination is an appropriate remedy.” Director Initiated Order for Reexamination, at 2 (Jun. 7, 2002). However, the issue of double patenting had been considered during the initial examination; and the examiner had found, as stated in the Reasons for Allowance, that: “The statutory double-patenting rejection has been obviated by the amendments set forth in the latest response ... The obviousness-type double patenting rejection is withdrawn as per MPEP § 804(I)(B).” Reason for Allowance, Application/Control No. 07/883,912, at 3 (Sept. 27, 2001).
The PTO apparently recognized that there was a problem with its initiation of this reexamination, for the Board stated that if this court were to find that the reexamination had been improperly initiated, on remand the PTO would simply institute another reexamination under the amended statute. Ex parte Basell, Appeal No.2004-1390, Reexamination Control No. 90/006,297, at 122 n. 37 (Aug. 19, 2004).
The PTO’s brief on appeal does not attempt to justify the reexamination on double patenting grounds, but instead argues only an alternative ground related to entitlement to the initial filing date and the effect of an intervening reference. This ground was also considered during the initial examination of the Natta '687 patent, with the examiner’s Reasons for Allowance stating: “The prior art rejections are withdrawn because the right to benefit of the filing date of the Italian [’109] priority application has been established, and thus the Vandenberg and Anderson patents are antedated.” In sum, no valid basis has been provided for this reexamination.
My colleagues now review only the double patenting rejection, ignore the underlying impropriety, and chastise the patentee for delays for which it was not responsible.

The issue of delay

The PTO criticizes the long period from initial filing to issuance of the Natta '687 patent. It is indeed extraordinarily long. However, the reexamination examiner acknowledged that there were “PTO delays due to multiple interferences which occurred from the 1950’s up to 1984 or 1985,” while also stating that the applicant “caused a substantial number of delays from 1985 to 2000.” Examiner’s Answer, Application Number: 90/006,297, at 30 (Jan. 13, 2004). The latter period included an appeal to this court, during which the PTO moved for remand in order to conduct additional examination. The record shows no violation by the applicant of the PTO’s rules and procedures, or any significant departure from standard practices, in Natta’s participating in time-consuming procedures.
*1381 The delays due to patent interferences are notorious, and here there were three, involving multiple parties and multiple countries. Interference delays generally flow from not only the complexity of the subject matter and requisite proofs, but also the due process that PTO procedures assure in these complex inter partes proceedings, including the rights of appeal and the authorized judicial proceedings. It may well be that the PTO has been unfairly criticized for the lengthy pendency illustrated by this patent; however, it is equally unfair to chastise this patentee, when most of the delay was agreed by the PTO to be due to its procedures.
Whatever the reasons for the prolonged pendency, delay is not a ground of double patenting.

The double patenting issue

The PTO had consistently found that the claims of the Natta '687 patent are patent-ably distinct from the claims of the '987 patent. In both the examination and the reexamination, the examiners found that the classes of copolymers and catalysts in the '687 claims were patentably distinct from those claimed in the '987 patent. The PTO agreed that the subject matter claimed in the Natta '687 patent is not an obvious variant of the '987 claims.
In the prosecution history of the Natta '687 patent, Dr. Natta had explained the issues involving the higher olefins of the '687 invention:
[T]he presence of any substantial amount of the higher olefins inhibits polymerization of the ethylene while the higher olefins, if they react at all, do so only at the very low reaction rates and, in any case, without yielding polymers of the type with which this invention is concerned.
Prosecution history of Natta U.S. Application No. 03/710,840, at 5. Expert polymer scientists testified that it would not have been predicted whether or how the higher olefins would behave in this system, or which catalysts would be effective. Professor Lido Porri testified that “Claim 1 of the '987 patent ... is too broad and incomplete to have motivated one of skill in the art in 1954 to attempt to prepare such a catalyst and to have had a reasonable expectation that a copolymer as recited could be prepared.” Declaration of Professor Lido Porri ¶ 44 (Oct. 30, 2002). Expert polymer scientist Dr. Joseph C. Floyd declared: “In mid-1954, the reference to the new two component catalyst system of claim 1 [of the '987 patent] would have been too broad to have motivated one of ordinary skill to attempt to prepare such a catalyst system and have had a reasonable expectation that a copolymer as recited could have been prepared.” Declaration of Joseph C. Floyd ¶ 40 (Nov. 4, 2002).
The expert witnesses explained that before the invention claimed in the '687 patent, attempts to copolymerize ethylene with a higher olefin had been unsuccessful. Both Professor Porri and Dr. Floyd so stated. Second Declaration of Professor Lido Porri ¶ 20 (May 24, 2005); Third Declaration of Dr. Joseph C. Floyd ¶ 41 (May 27, 2005). Indeed, the PTO does not dispute that the claimed subject matter of the '687 and the '978 patents is patentably distinct. The presence of overlapping subject matter, and the specific choice of catalyst, present technological questions that were answered by the experts, without contradiction. The record contains no contrary authority, no citations or references or arguments, other than the flawed presumption of “homology” created by my colleagues.
All of the experts testified as to the inability at that time to copolymerize ethylene and butylene, and that it was not possible to predict whether any adaptation of these new catalyst systems would achieve this long-sought result. The reexamination examiner wrote that “The pres *1382 ent coinventors developed a ground-breaking invention, so one skilled in the art would have been astounded by their accomplishments at the time the invention was made.” Examiner’s Answer, Application Number: 90/006,297, at 38.
The law of double patenting is in terms of whether the later claimed invention is an obvious variant of the earlier claimed invention. In General Foods Corp. v. Studiengesellschaft Kohle mbH, 972 F.2d 1272 (Fed.Cir.1992), the court stressed the critical role of patentable distinction in obviousness-type double patenting:
[T]he determining factor in deciding whether or not there is double patenting is the existence vel non of patentable difference between two sets of claims. The phrases actually used in the opinion include “patentably distinguishable,” “patentable distinctions,” and “whether such differences would have been obvious to one of ordinary skill in the art.” They are all equivalent.
Id. at 1278-79. Although the Board ruled that it was irrelevant whether the '987 patent provided guidance for polymerization of alpha-olefins higher than propylene, such lack of guidance or absence of enablement is indeed relevant to whether the later invention would have been obvious in light of the earlier, or whether the asserted obvious variant could have been patented in both patents. As the '687 patent states, and as the witnesses reinforced, longer chain hydrocarbons behave differently, and their catalysis is unpredictable. See '687 patent col. 1,11. 62-65 ( it was not apparent that those [reaction] agents would be useful in the polymerization of the unsaturated hydrocarbons containing the vinyl group.”); id. at col. 2, 11. 54-58 (“In view of the foregoing, it could not be predicted, from the work with ethylene, that our polymerization agents would be useful for the production of higher molecular weight polymers of the vinyl hydrocarbons of formula CH2=CHR as defined herein.”) In addition, the claims must be considered in their entirety, including the specific catalysts, whose use in these specific systems is agreed not to be shown in the earlier patent.
In sum, in view of the recognition that the process in the '687 claims is patentably distinct from the '987 claims, double patenting can not lie. See Application of Sarett, 51 C.C.P.A. 1180, 327 F.2d 1005, 1016 (C.C.P.A.1964) (reversing rejections for obviousness-type double patenting because generic and specific claims may nonetheless be patently distinct); see generally In re Jones, 958 F.2d 347, 350 (Fed. Cir.1992) (explaining that a disclosure of a chemical genus does not automatically render obvious any species within the genus).
In view of the irregularity of the reexamination and the flawed rulings on this appeal, I must, respectfully, dissent.

. In In re Swanson, 540 F.3d 1368, 1381 (Fed.Cir.2008), this court commented on the amended section 303, stating that "we are mindful that Congress intended that the courts continue to ‘judiciously interpret the substantial new question standard to prevent cases of abusive tactics and harassment of patentees through reexamination.’" (citing H.R.Rep. No. 107-120, at 3 (2002)).